Please the court. Mary Kay Robinson, Office of the Federal Defender, Western District of Tennessee. We're out of Memphis. Reserve maybe two minutes for rebuttal. You may. Thank you. I thought about admissions and confessions today while sitting here listening to argument. I guess I'll join in and make an admission or confession of my own. I think Mr. Young is probably right. I probably did waive the right to attack the constitutionality of the motion to suppress. I bring it because there was a little change within the testimony or from the testimony of the officers than the posture that I believe the government was in prior to trial. I filed a motion to suppress. The government responded. They responded not though that my client made a statement as a result of custodial interrogation. They said that he volunteered the statement. This is in their response. That would be at record entry number 27, page ID 141. That he volunteered, that he was a felon, that he volunteered, that he carried guns for his protection. But that was not the result of direct questioning. At trial, Officer, I think it was Flatco and Winsett both testified that one did question and the other one heard him question. But I think Mr. Young is probably right. I only bring it for those reasons and I want to tell the court why I brought it. But I think he's probably right that that has been waived at this point, especially since I didn't re-raise it at the end of the trial. But I'd like to ask the court to consider the fact that district court didn't let Mama testify. Our position is that the district court abused their discretion. Basically what had happened in this case is that a testimony came out from the officers that this was kind of a run-of-the-mill sort of thing. My client confessed or admitted at the scene and signed a written confession. But on cross-exam and then upon the testimony of Mr. Givens, he testified that he was in the back of the squad car. He somehow had his cell phone when they found the pills or whatever on him. He had his cell phone and was able to kind of manipulate it over, turn on the speaker and call his mama. And then he called his mama and his mama perceived in real time what was happening in the back of that squad car. Why is that important? Well, court found it was hearsay that what the mama's testimony would have been. I should say Mrs. Givens. Mrs. Givens' testimony would have been. It was hearsay. Well, I oppose this court. It's not hearsay. That's a misapplication of the law. That's an abuse of discretion. But the defendant's version came in. The defendant's version did come in. But the defendant's version was, of course, that he made a call and what had happened in terms he got hit in the neck, something to that effect, that he ultimately told other officers, asked for help, those sorts of things. But the mother heard it in real time, and her perceptions in real time are not hearsay. And that's what the court ruled below. But assuming for the purpose of the discussion that that evidentiary ruling was error, wasn't it harmless? Not harmless at all, actually, Your Honor. I think the issue is, in terms of harmlessness, is well into my notes. But we're talking about his Sixth Amendment right to put on a defense. And that case law that we cited in the brief is Crane v. King. I think it's really Crane v. Kentucky. It's a Supreme Court case. If he's not allowed to put on his proof, and his proof would be someone that perceived what was happening at the time in real time, he'd be denied meaningful opportunity to present a complete defense. He's got a Sixth Amendment right to a trial and to put on his defense. And we were very clear what the defense was at the beginning. In fact, that's when I think I waived the motion to suppress in the Fourth Amendment because we wanted to be able to get into the voluntariness of the statement. Well, that argument would carry more force if the defendant hadn't elected to testify in the case himself. Well, unfortunately, prior to him testifying, we had a jury out, a proffer of the mother's testimony. And the court basically found, well, we'll see what happens after Mr. Givens testifies. And so Mr. Givens then elected to testify to put his, I guess, to put all these matters at issue. And what happened is it then created relevancy of her testimony, relevancy as to not just one issue but multiple issues, whether or not there was violence or coercion. I mean, the police officers testified there wasn't any of that, that everyone was cooperative. Mr. Givens said no. Actually, the officers got really angry when they saw guns, started talking about bench pressing 400 pounds. Whether or not Officer Flotko was angered or even whether or not there was a phone call made, Officer Flotko and Officer Winsett did not say anything about a phone call. I guess your side didn't go to the phone company records and show that a call was made. I mean, these days that stuff is all available, isn't it? Absolutely, and we did. Unfortunately, I was not able to receive those. Six months after it happened, I'd already been appointed, I guess, I think it was eight months after this had happened. But that would absolutely have been the right thing to do to confirm that. But the other way to confirm it is to allow a person that perceived it in real time to testify. The district court gave several reasons, but one of them also was 403, prejudice versus probativeness and confusion, which is a quintessential trial judge discretion. And I was struck by the fact that before the trial, the judge, when he ruled that he was going to let this in, the government had tried to raise 403 at that point, and he says, no, this is all understandable. And then when it gets to this mama testimony, which is whether or not it's hearsay, it's at least a couple of steps removed in terms of what she could hear and whether it conflicted him. Why isn't that the quintessential trial court ruling that 403 applies? Well, in terms of the balancing test, there wasn't a balancing test. Judge Foulkes ruled it was more prejudicial than probative. He didn't say why. He didn't go through that act. And when this court reviews the district court under United States versus Adams, which is a RICO voting fraud case, so not alike in the facts, but it advised that in the review that we need to maximize the probative value and minimize the prejudicial effect. So that's where we are now. And the fact that a district court judge didn't even do a balancing test doesn't mean I automatically get a new trial or anything like that,  because the test is not whether or not the government's case is heard or anything like that. It's whether or not there's a risk of unfair prejudice. And I'm not sure what that prejudice would have been since we're talking about an individual who is testifying about what she heard in real time. And I'll take it a step further. I think we had a right to put on even lay witness opinion testimony under 701. We're talking about what she perceived in real time. We're talking about whether or not this would be helpful, the information would be helpful or instructive to the jury about facts that are at issue. And I've described some of those facts that were at issue, that are at issue. Is there anything in the record about whether but for the statement about his admission that he was a felon, whether he would have been arrested or not? There really is nothing in the record about that, Your Honor. I suspect, given the project safe neighborhoods in Memphis, Tennessee, that he would have been. But that's just my experience, and I can't be a witness. But isn't that relevant in a way? Because had he been arrested in short order, they would have known he was a felon. I guess that's somewhat. I mean, that's absolutely relevant. But whether or not that permits the court to restrict our putting on of testimony and testimony of a witness that perceived things in real time, I think it kind of begs the question. I mean, perhaps they would have found that out. We conceded it at trial, actually. The question isn't whether he was abused. This isn't an unreasonable force suit. The question is the information that was elicited and the manner that it was elicited. And it's sort of almost an inevitable discovery kind of situation, because if he had been taken to the station house at all, they soon would have known he was a felon. Sure, but the question, I think, or the admission is whether or not he was in possession. And the admissions were that he took, I guess, credit for all the guns at that point. And did he have a motive, or did he have a real reason for that? And he testified that he did, that he was struck by an officer, that his mother heard it, that he had called his mother at the time. And that happened right at the time where the motive was creative for a man to say, oh, yeah, sure, I did it. I just need to get medical help. I'll do whatever you're saying. Stop hitting me, whatever that is. And, again, you're right. We waived the motion to suppress, but we're talking about our theory of the case. And the defense has a right to put on all the proof necessary for a real comprehensive defense. And that defense would include witnesses like his mother. It is his mother. She's subject to cross-examination, and we even asked for a limiting instruction. Judge could have said, well, you know, I'm going to let you ask her questions about what she heard, maybe not the words he said, something to that effect. So that way it's not an all or nothing thing. But I still would present to this court that when we're talking about a defendant's, a criminal defendant's right to put on his proof, and in a case like this where it doesn't appear that it was hearsay, that even if it was hearsay, and I do not concede that, even if it was hearsay, there were proper purposes to present it. Motive, reason for him to accept responsibility for crimes he didn't commit. Rehabilitation, the government spent quite a bit of time talking about jail calls, and their perception, the government's perception, maybe not the jury's perception, was that those calls were admissions. But his credibility is at issue, and we reasonably could use the mother's testimony to rehabilitate him, at least as to the fact that that phone call was made, and maybe as to the other things as well. Mr. Young makes the point that in terms of it being the ruling based somewhat on confusion, the fact that the defendant's testimony, that he was hit only once, and his mother's proffered testimony is to the contrary, multiple hits, so to speak. What's your response to that? I mean, that's accurate. That's the way the proffered testimony and the defendant's testimony came in. But isn't that the province of the jury to make those distinctions? Since we have someone who is testifying to what she perceived, and she testifies, let's say she does testify, and the jury can discredit her and say, well, it's different than what I heard, or they could credit her and say, well, that makes sense. They could discredit the defendant. They could credit the defendant. It's up to them. The court has got some fact-finding role, I think it's under 104A and B, as to whether or not is she competent as a witness. I mean, if she were blind and testified to what she saw, she wouldn't be competent. If she's deaf and she testifies to what she heard, she wouldn't be competent. But I think taking that next step and deciding, well, this is different than what I heard before, is a credibility determination that should have been left to the jury. And for that reason, I think also that the district court judge abuses discretion, and I think I'm out of time. Okay. Thank you, counsel. Remaining time for rebuttal. May it please the court. Marcus Young, assistant United States attorney, representing the United States. The defendant's conviction should be affirmed for two reasons. One, the defendant waived his right to challenge the voluntariness of his statement when he withdrew the motion to suppress for the purposes of trial strategy. And two, the district court did not abuse his discretion in excluding the testimony of the defendant's mother. Being that that testimony amounts to hearsay, speculation, and under 403, the appropriate value was substantially outweighed by the danger of unfair prejudice. Defendant basically conceded to issue one, the motion to suppress. I want to just note that in the defendant's first motion that was filed several months prior to trial, the defendant actually attached an arrest ticket, which in the arrest ticket outlined the question that the officer asked. There was an actual question asked whether inquiring upon the criminal history, and the defendant responded, yes, I'm a felon. I keep guns for possession. So it wasn't necessarily a spontaneous uller. There was a question that was asked regarding specific to the defendant's criminal history. Also, Judge Guy, you asked a question regarding was there anything else that the defendant could have been arrested for if he was going to be arrested? When officers approached the SUV which the defendant was in, Officer Booker testified that he smelled an odor of marijuana. In addition, the Officer Filacco testified when he asked a question regarding the defendant's criminal history. It was to determine whether he was going to charge him with a felon or a misdemeanor. Under Tennessee law, if you're a convicted felon, it's a felony offense as well. But if you're not a convicted felon, if there is no permit, then it's a misdemeanor. So the defendant was going to be arrested. Sorry, when you say no permit? No, I'm sorry, no handgun permit, being that there was no firearm. I apologize. So the defendant was going to be arrested, and the ultimate determination whether it was going to be a misdemeanor or a felony. In addition, officers on the scene can actually make that determination whether the defendant is a felony. In addition, in this case, a trial defendant stipulated to being a felon in possession, excuse me, being a felony, being convicted of a prior felony. Moving on to the issue of the trial court's exclusion of the defendant's testimony, going directly, excuse me, the defendant's mother's testimony, going directly to the 403 analysis. The mother testified that she heard through a phone them hitting him, hitting him, and hitting him, and it sounded like a stick, which the court already recognized that that was far exceeded the defendant's own testimony, as he was only struck once and struck with an elbow, not a foreign object, as testified to by the defendant's mother. But you can't keep testimony out because it's inconsistent with other testimony. Correct. Under the 403 analysis, being that that far exceeded the defendant's own proof, at the time of this trial there was a significant national attention being brought to the issue of police misconduct. And actually, a week prior to this trial, there was a big issue regarding police misconduct. And being that that testimony, which far exceeded using a foreign object, testimony that even the defendant would testify to, highly prejudiced the United States, which the very little value that it would have brought on the ultimate issue of whether he possessed the firearm. In this case, if the court position holds that it was error, however, it was basically harmless error. Being that, as the court noted, the defendant did testify. He testified as to his version of what occurred. In addition, there were some medical records, which was introduced into evidence by the defendant as well. In its totality, for the ultimate issue, there were jail phone calls that were introduced where an individual who he was speaking to by the name of Blair asked the question if he was in possession of the firearm. He said three. He said yes. Were they loaded? Yes. And he asked the question, and the female caller asked the question, was there one in the chamber? And the defendant's response, ready. In addition, the other three passengers that were in the vehicle, they all testified. They all testified saying that three of the firearms that the defendant was charged with were not theirs. In addition, one of the firearms was claimed by one of the other passengers. So there's, again, overwhelming proof. You made reference a minute ago to the medical records introduced by the defendant. Yes. What did they show? All that showed that the defendant received treatment based on his allegation that he was struck and he just received aspirin or ibuprofen for injury. There were no bruises or no physical documentation or treatment for those outside of aspirin or ibuprofen. Some said one of those specific medications. Again, based on, in summing up, the defendant's conviction, again, should be affirmed, being that the defendant's motion suppressed, basically was waived when it was withdrawn, and, again, with the testimony from the defendant's mother. The trial court did not abuse his discretion, in which trial court's discretion on this issue is broad. I'm sorry to interrupt. Mr. Young, you referenced the existing situation, I take it, in Memphis with regard to police. Are you talking national? National. Okay. But do we have anything in the record that the trial court added that feature of inflammatory to his analysis? Is there anything in the record about that? No, Your Honor. Okay. And did you make it an argument or filing, or is that a post hoc rationalization? It is a post hoc issue, Your Honor. All right. Thank you. Thank you. And, again, in summary, the judgment of the lower court should be affirmed. Thank you. You have your remaining time for rebuttal. Thank you, Your Honor. In reference to the medical records, and they were admitted, actually, the medical records showed, and this was through a keeper of the records, that the defendant reported that he had been struck while in the police car in the neck and that he had pain in his neck and had numbness in the corresponding hand. No medical expert testifies, just the keeper of the records, but that is in the record. Also, with reference to whether or not this is harmless error, again, I ask the court to consider this. Sometimes it's not just whether or not justice is done. It's whether or not there is an appearance of justice being done. And in this case, not only did we have kind of a late confirmation that there was custodial interrogation without Miranda advice given first, but we also found that officers would take the stand, walk outside, and go tell the next officers what was coming. Very unsettling to me, much more unsettling to the person, when it says United States v. August Givens, about whether or not the system works and whether or not the system will work for him. And I don't mean just winning. It's actually that justice was done. And so in a situation like this, I think terming this as being harmless error, when a person is not permitted to put on their full proof, and when that witness is somehow not competent to testify, but that person actually perceived something in real time, I think we find an abuse of discretion. It was not hearsay. There was a mistake in the law. But moreover, we have the defendant and the individuals that are present in the courtroom hearing that the court is basically going to allow testimony from officers that consult, even though it's allowed to ask about that, but also the defendant hearing that and knowing that. I think that's something for the court also to consider. And if there's any further questions, I'd be happy to answer them. So was that one of your grounds of error, the officers consulting, or is that just atmospherics? Well, it's in the record. But I mean on your appeal. Are you saying we should reverse? No, but I think you can consider it when we're talking about whether or not the error is harmless. In terms of whether or not the perception of justice was done, I think the court can consider it for that perception. I did not raise that to say that somehow the officers were less credible because of that. But I think that's for the jury to infer from what they heard, because I did get to question Officer Filatko about whether or not he had consulted with the previous attorney. I'm sorry, with the previous officer. Thank you. Thank you, counsel. That case will be submitted. The remaining cases will be submitted on briefs, and you may adjourn court.